# MISSOURI AND SOUTHWESTERN LAND COMPANY, Appellant, v. QUINN.

### Division Two, March 17, 1903.

1. **County Court: ORDER TO COMMISSIONER TO SUE: COUNTY SEAT LOTS.** County courts are creatures of the statutes and whatever authority they exercise must be expressly given them by statute. The order of a county court to the county seat commissioner appointed under 1 Wag. Stat., p. 397, sec. 15, et seq., to sell the residue of lots reserved for county seat purposes, to sue a purchaser who has failed to pay notes given by him for the purchase of such lots, is a nullity. The law gives the court no authority to make such an order.

2. ————: ————: **SUIT BY COMMISSIONER.** The law does not confer upon the county seat commissioner authority to sue for the balance of the money due on notes given for the purchase of the residue of county seat lots until after the lots have been resold, and the proceeds of that sale are found not sufficient to cancel the note given by the original purchaser.

3. ————: ————: ————: **VENDOR'S LIEN.** Nor did such notes create a vendor's lien in favor of the county against such lots sold by the county seat commissioner, for the reason that the lots were not conveyed to the purchaser, nor was there any authority under the statute to convey them to him until they were paid for.

4. ————: ————: ————: ————: **WAIVER.** Even if the county were given a vendor's lien on the lots sold, by taking other sureties on the notes given by the purchaser therefor, it waived such lien.

5. ————: ————: ————: **JUDGMENT AND SALE UNDER EXECUTION.** The statute required that where the residue of lots reserved by statute for county seat purposes might be sold by a county seat commissioner appointed for the purpose, the lots should be forfeited to the county upon the failure of the purchaser to pay for the same; and if the lots had by statute been so forfeited, a suit by the commissioner on the unpaid purchase note in the circuit court, judgment, execution and sale, passed no title to the purchaser, but thereafter the county had authority to sell to other persons, and a deed to such persons from the properly appointed commissioner conveyed the title, in law and equity, as against the execution purchaser.

Land Co. v. Quinn.

6. ——: ——: ——: ——: ESTOPPEL. Nor is the county estopped from claiming title to the lots after they have by statute been forfeited to it, by the fact that it ordered the commissioner to institute suit on the purchaser's note and they were sold under execution.

7. **Limitations:** NONSUIT BEFORE SUIT BROUGHT. A suit brought after the statute of limitation has run in favor of defendant is not saved from the penalty of limitations by a voluntary nonsuit in another suit timely brought, entered after the bringing of the suit, with nothing in the petition to indicate that a nonsuit had been suffered, but not entered. The statute as to nonsuits applies to the bringing of suits after nonsuit is suffered, and not before.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*E. R. Lentz* for appellant.

(1) When Butler county, by its officers and agents, sold the lots in controversy to Poplin, accepted his notes in payment of the purchase money, caused suit to be brought on said notes, obtained a decree foreclosing Poplin's equity of redemption and ordering the lots sold for the payment of the debt, caused a special execution to be levied upon said lots, and the lots to be sold thereunder, and appropriated the purchase money thereof, it renounced all claim to said lots, and estopped itself from thereafter claiming any title thereto. Austin v. Loring, 63 Mo. 23; Wilcoxen v. Osborn, 77 Mo. 631; Chouteau v. Goddin, 39 Mo. 250; Pockman v. Meatt, 49 Mo. 398; Chase v. Williams, 74 Mo. 437; Stroble v. Smith, 8 Watts 280; Com. v. Sherman, 6 Har. 343; Smith v. Worden, 7 Ill. 424. (2) By the sale to Poplin, by the decree of foreclosure, and sale thereunder to Bradley, and by the payment by him of the purchase money therefor, Bradley became invested with the full equitable title to the said lots, and the county thereafter held the legal title as trustee for him and those claiming under him. Ten Eyck v. Simp-

son, 1· Sandf. Ch. 245; Champion v. Brown, 6 Johns.
Ch. 400; Goveneur v. Lynch, 2 Paige Ch. 300; Widdi-
combe v. Childers, 84 Mo. 394; Perry on Trusts (2
Ed.), sec. 231; Ibid, sec. 236.   (3)   Defendant Quinn
admits that he had full knowledge of all these facts
before he received his deeds from the county for these
lots.   He therefore stands precisely in the same rela-
tion as ·Butler county would·if it had not conveyed to
him.   Austin v. Loring, 63 Mo. 22.   (4)   Quinn was a
trustee for the plaintiff, in possession of the trust prop-
erty—he must account for all rents and profits coming
into his hands.   The burden of accounting for the act-
ual profits rests upon him; he has not furnished evi-
dence of them; hence he invites the application of the
rule that will most nearly approximate the actual gains.
Perry on Trusts (2 Ed.), sec. 471; Cruce v. Cruce, 81
Mo. 684; Pomeroy v. Benton, 77 Mo. 84; Bobb v. Bobb,
89 Mo. 422.   (5)   The case of Missouri and South-
western Land Company v. L. F. Quinn and Butler
County was begun in 1892, and continued on the docket
until July, 1898, when a voluntary nonsuit was suffered.
Plaintiff had one year from that time in which to com-
mence another suit.   The first suit was begun within
ten years, and this suit begun before the other was
dismissed; therefore there is nothing in defendant's
plea of the statute of limitations.   R. S. 1899, sec. 4285.

*L. D. Grove* for respondent.

(1)   Estoppel *in pais* or by conduct can never be
invoked against a county by acts of its officers. Heidel-
berg v. St. Francois Co., 100 Mo. 76; Johnston v. Dist.,
67 Mo. 319; Maupin v. County, 67 Mo. 327; Sturgeon
v. Hampton, 88 Mo. 203.   (2)   By the statute, title
can only pass by some act of the county-seat commis-
sioner. His powers under that act can not be dele-
gated to any other officer; yet the matters here claimed
to estop by conduct are acts of other officers.   State
ex rel. v. Murphy, 134 Mo. 575; Mathews v. Alexan-
der, 68 Mo. 119; 15 Am. and Eng. Ency. of Law, 1045.

(3)   Laches could have been well urged at the commencement of the suit in 1892; it was then seven years stale.   (4)  The statute of limitation pleaded had barred this case.    Plaintiff claims relief from this bar by the provisions of section 4285, Revised Statutes 1899; but this statute does not in terms permit suits to be commenced from time to time, in contemplation of suffering a voluntary nonsuit after the commencement of a new suit.   This suit was commenced before dismissal of the first, and plaintiff is not within the saving terms of that statute, either by his pleadings or his proof. The rulings of this court in the cases of Briant v. Fudge, 63 Mo. 489, and Wood v. Nortman, 85 Mo. 298, do not apply in this case, as in those cases the nonsuits were taken after notice given that nonsuits would be taken, and which notices were given before the commencement of the second suit.   (5)   Green L. Poplin had no title which was liable to sale under execution at which Bradley bought, of all of which Bradley had notice.   Block v. Morrison, 112 Mo. 351; McIlvaney v. Smith, 42 Mo. 45.

FOX, J.—This suit was commenced by filing petition in the Butler Circuit Court on July 23, 1898.   It is necessary to a clear understanding of the questions involved in this case, to quote the pleadings, which is done.   Omitting the captions, they are as follows:

Petition.

"Plaintiff says that it is a corporation duly organized under the laws of the State of Missouri and doing business in the city of Poplar Bluff, Missouri.

"Plaintiff, for cause of action, says, that heretofore, to-wit, on or about the 12th day of February, A. D. 1871, the defendant, the County of Butler, being the owner of the fee simple title to lots one hundred and ten and one hundred and twelve, in the original town of Poplar Bluff, Missouri, sold both of the said lots to one Green L. Poplin; and on or about the same day the said Green L. Poplin executed and delivered to the county of Butler his certain promissory note for the

sum of one hundred dollars, with John R. Poplin and John S. Varner as sureties thereon, which said promissory note was given for a part of the purchase money for said lot one hundred and ten above described. And also, on or about the same date, the said Green L. Poplin made, executed and delivered to the said county of Butler his certain other promissory note for the sum of one hundred dollars, with John R. Poplin and John S. Varner sureties thereon, which said note was given for a part of the purchase money for the said lot one hundred and twelve as above described and set out. Copies of both of which said notes are herewith filed, marked exhibits 'A' and 'B,' and prayed to be made a part of this petition.

"That afterwards, to-wit, at the May term, 1879, of the circuit court of said county, the said county of Butler proceeded to and did obtain a judgment on the said first-mentioned promissory note, and also a decree foreclosing the lien of the county on the said lot, for the unpaid balance of the purchase money due them from the said Green L. Poplin to the county of Butler; which said judgment was, in conformity with the prayer of said petition, made a special lien on said lot one hundred and ten, and special execution was ordered, to sell said lot to pay said judgment, and that under said judgment and special execution the said lot was sold, and at the sheriff's sale was purchased by Theophilus H. Bradley; and the sheriff of said county, in pursuance to said judgment and special execution, and the sale thereunder made, executed and delivered to the said Theophilus H. Bradley a deed to the said lot. A copy of which sheriff's deed is hereby filed, marked exhibit 'C,' and asked to be taken as a part of this petition.

"And afterwards, to-wit, at the May term, A. D. 1879, the said county of Butler obtained a judgment on the second note above mentioned, and a decree of foreclosure of the said lien of the said county, for the unpaid balance of the purchase money due from the said Green L. Poplin to the said county of Butler; and by the said judgment the same was ordered to be a lien

on said lot number one hundred and twelve, and special execution was ordered to sell said lot to satisfy said judgment, and in pursuance to said judgment and special execution, the then sheriff of Butler county proceeded to levy on and sell said last mentioned lot, and did sell the same, and Theophilus H. Bradley was the purchaser thereof, at said sale; and the said sheriff made, executed and delivered to said Theophilus H. Bradley a deed, a copy of which is herewith filed, marked exhibit 'D,' and made a part of this petition, conveying to him the said lot one hundred and twelve, in pursuance of said sale made under said special execution.

"That afterwards, to-wit, on the 18th day of April, A. D. 1881, the said Theophilus H. Bradley sold said lots 110 and 112 before described, to W. A. Kendall, and by his warranty deed of that date conveyed the said lots to the said W. A. Kendall, for and in consideration of two hundred dollars to him paid; a copy of which said deed is herewith filed, marked exhibit 'E,' and prayed to be taken as a part of this petition.

"That afterwards, to-wit, on the third day of July, A. D. 1883, the said W. A. Kendall sold said lots to the plaintiff herein, and the said W. A. Kendall conveyed the same, together with a large amount of other real estate, by his warranty deed of that date, to the Missouri and Southwestern Land Company, the plaintiff, a copy of which conveyance is herewith filed, marked exhibit 'F,' and made a part of this petition. And from that time hitherto the said company has owned said lands.

"That all said conveyances above herein set out were duly placed on record on the land record of said county. That plaintiff has since that time paid the taxes, both state and county, on the same. That by reason of the said sale of the said lots to the said Green L. Poplin, as aforesaid, and by reason of the said action by the said county of Butler, in bringing its said suit in the said circuit court against the said Green L. Poplin, for the foreclosure of its lien upon the said lots for the

unpaid balance of the purchase money of the said lots due to it from the said Green L. Poplin, and by reason of the said decree of foreclosure and special execution issued thereon, and the sale thereunder by the sheriff of the said county, and by reason of the said purchase of the said lots at the said sale by the said Theophilus H. Bradley, and by reason of the said deed from the said sheriff of the said county of Butler to the said Theophilus H. Bradley, he, the said Theophilus H. Bradley, became and was the owner of rights and equities which the said county of Butler had in and to the said lots, and became seized and possessed of a full and perfect equitable title to the said lots; and while the bare legal title thereto remained in the county of Butler, yet the said county held the said title thereto as a trustee, and for the use and benefit of the said Theophilus H. Bradley and those claiming title thereto, by, through or under him; and that by reason of said deed of conveyance from the said Theophilus H. Bradley to W. A. Kendall, and the said deed from the said W. A. Kendall to this plaintiff, it became seized and possessed of the full and perfect and equitable title to the said lots above described, and as such became and was entitled to the full use, possession and enjoyment of the said lots.

"But plaintiff further says: That thereafter, to-wit, on or about the 25th day of July, 1885, and on or about the 19th day of November, 1896, the defendant, the county of Butler, by its officers and agents, well knowing the premises, and the defendant, Luke F. Quinn, who had full knowledge and information of the aforesaid proceedings in the county court and in the circuit court as aforesaid, and with full knowledge of the claims and title of this plaintiff in and to the said above described lots, did enter into a fraudulent and collusive arrangement with each* other, to cheat and defraud this plaintiff; and that in pursuance of the said fraudulent and collusive arrangement the county of Butler undertook to sell and convey to the defendant, Luke F. Quinn, the said lots above described and

set out, that is to say, the said county of Butler, in consideration of fifty dollars to it paid by the said Luke F. Quinn, on the 25th day of July, 1885, by Charles W. Addy, its commissioner, made, executed and delivered to the said Luke F. Quinn, a deed, purporting to convey to the said Luke F. Quinn the whole of said lot one hundred and twelve, in the said original town of Poplar Bluff; a copy of said deed is herewith filed, marked exhibit 'G,' and asked to be taken as a part of this petition, and which said deed was by the said Luke F. Quinn filed for record in the office of the recorder of deeds of the said county, and is recorded in book V at page 355 of the record of deeds of the said county of Butler. And that on the 19th day of November, 1886, in further pursuance of the said fraudulent and collusive arrangement between the officers and agents of the said county of Butler, in consideration of the sum of fifty dollars paid by the said Luke F. Quinn, by its commissioner, Charles W. Addy, made, executed and delivered to the said Luke F. Quinn, another deed, purporting to convey to the said Luke F. Quinn, the whole of lot one hundred and ten, in the said original town of Poplar Bluff; a copy of which said deed is herewith filed and marked exhibit 'H,' and asked to be taken as a part of this petition; and which said deed was by the said Luke F. Quinn filed for record in the office of the recorder of deeds of the said county, and is recorded in book V at page 470 of the record of deeds in the said county.

"Plaintiff says that, by reason of the fact that the officers and agents of the county of Butler well knew of the proceedings of the said county of Butler against the said Green L. Poplin, and the sale of the said lots under the said special execution in favor of the said county, and the purchase of both of the said lots by the said Theophilus H. Bradley, as aforesaid, the said county of Butler was estopped from claiming or asserting any title to or interest in the said lots, or either of them, and could convey no title to the said lots; and that the said Luke F. Quinn took the said conveyances

from the said county of Butler with full knowledge of all of said proceedings by the said county of Butler against the said Green L. Poplin as aforesaid, and with full knowledge of the claim and title of this plaintiff in and to the said lots; and that the interest and title of this plaintiff in and to the said lots is paramount and superior to any claim or title which the defendant, Luke F. Quinn, may have in and to the said lots by reason of his said fraudulent and collusive conveyances from the defendant county; yet, inasmuch as the said deeds from the county of Butler to the said Luke F. Quinn have been placed upon the records of the said county, by the said Luke F. Quinn, they create a cloud upon the title of the plaintiff such as will prevent a sale of the said property by this plaintiff, and injure it in the enjoyment of its said property.

"Plaintiff further says that the defendant, Luke F. Quinn, is now, and for some time past has been, in the possesssion of the said above described premises, and the title of this plaintiff being an equitable title, the said conveyances from the county of Butler to the said Luke F. Quinn constitute such an outstanding legal title in the said Luke F. Quinn as will prevent this plaintiff from maintaining its action of ejectment for the recovery of the possession of the said lots. So that this plaintiff is wholly without remedy in the premises, saving only in a court of chancery where plaintiff's equitable title and claim to said lots may be properly adjudicated and enforced.

"Wherefore, plaintiff prays that this honorable court will take cognizance of the matters and things herein alleged, and will by its proper decree adjudicate, determine and declare the title of this plaintiff to be paramount and superior to any title or claim of the title which the defendants, or either of them, may have in and to the said lots, or either of them. And that the two deeds from the said county of Butler to the said Luke F. Quinn, copies of which are herewith filed and referred to as exhibits 'G' and 'H', respectively, be cancelled, set aside, and for naught held, and that the defendants,

Butler county and Luke F. Quinn, and each of them, be divested of all the right, title and interest, or claim of title which they, or either of them, may have in and to the said lots, or either of them, and that the full legal title be vested in this plaintiff, free and clear from claim, interest or title of the defendants, or either of them. And that this honorable court will grant to this plaintiff its writ of possession, and that this plaintiff be granted such further and other relief as to equity and good conscience may seem meet.

"And for a further and other cause of action, plaintiff says that on the first day of January, 1889, it was the owner of and entitled to the possession of the following described premises, situate in the county of Butler, and State of Missouri, to-wit, all of lot one hundred and ten, and all of lot one hundred and twelve, in the original town (now city) of Poplar Bluff, Missouri, and being so entitled to the possession thereof, that the defendant afterward, on the first day of January, 1890, entered upon the said premises, and unlawfully withholds from the plaintiff the possession thereof, to its damage in the sum of one thousand dollars. Wherefore, it demands judgment for the recovery of the said premises, and for one thousand dollars damages for the unlawful withholding of the same from the plaintiff, and ten dollars for the monthly rents and profits from the rendition of the judgment until possession is delivered to the plaintiff; and for other proper relief."

Answer.

"Now comes the defendant, Luke F. Quinn, and files this, his separate answer to the plaintiff's petition, leave of court first having been had, and says:

"He denies that Butler county sold to Green L. Poplin lots 110 and 112, or either of them, as in plaintiff's petition alleged.

"He admits that the county of Butler did sell to Luke F. Quinn the said lots, at the time in the petition alleged, and received a patent therefor, as alleged, and

admits that the copies attached to the said petition are copies of the patents so received by him.

"He alleges that immediately after the said patents were delivered to him he went into the actual possession of the said lots, and has ever since that time been in the actual, open and notorious possession thereof, and is now in the actual possession of the same; that since the making of the said patents, and the taking possession thereof as aforesaid, he has paid annually all taxes levied thereon, both state, county and city taxes, has fenced and maintained fences thereon, erected buildings on lot 110 of the value of $800, and on lot 112 of the value of $800, and claims title to each of the said lots by virtue of the said patents.

"And for a further answer defendant says that the plaintiff has no existence in this State or anywhere else; that it has long since forfeited its corporate existence, and has no right to sue or be sued under the laws of this State, or any other State or territory in the United States.

"Defendant further alleges that the petition does not state any cause of action of which a court of equity has jurisdiction, but that if the plaintiff has any cause of action, it is by and through an action at law.

"That each and every allegation in the said petition stated he denies, except those herein specifically admitted; he therefore asks the judgment of this court to be hence dismissed of this suit, with his costs; and defendant will ever pray, etc."

Replication.

"Now comes the plaintiff, and for replication to the answer of defendants herein, denies each and every allegation of new matter therein contained."

Statement.

The defendant, Butler county, withdrew its answer and interposed a demurrer to the petition, alleging that the petition stated no cause of action as against the said county, and that the county was not a necessary or proper party defendant in said cause.

The court sustained the demurrer and dismissed the petition as to Butler county, to which plaintiff objected and excepted, and the cause proceeded against the defendant Quinn alone.

This is an action in equity to assert an equitable title to the lots in controversy, described as lots 110 and 112, in the original town of Poplar Bluff, Missouri, and to have the legal title to the same vested in plaintiff, and to recover possession thereof.

The facts upon which this relief is sought, as alleged in the petition, and supported by the testimony, are about as follows:

On and prior to February 7, 1871, the county of Butler was the owner, in fee simple, of these lots. On that day the county of Butler, by its duly authorized county-seat commissioner, sold these lots to one Green L. Poplin, on a credit of twelve months, for the price and sum of one hundred dollars each, and took Poplin's notes therefor, due twelve months after date, with John R. Poplin and John S. Varner as sureties. These notes were for $100 each, one reciting that it was given for lot 110, and the other for lot 112. This sale was by the county-seat commissioner reported to the county court, and by it approved on July 25, 1871.

On November 30, 1877, the county court of Butler county made an order directing the county-seat commissioner to bring suit on all notes in his possession belonging to the county-seat fund, on which interest had not been paid.

On April 9, 1878, Butler county, by its attorney, and to the use of the county-seat fund, filed its petition in the circuit court for said county, against Green L. Poplin, John R. Poplin and E. C. Lacks, as administrator of J. S. Varner, deceased, setting out the making and delivery of the above note given for lot 110 and alleging that same is still due and unpaid; that the same was executed as a part of the purchase money for said lot, and praying that the amount due and unpaid upon said note be decreed to be a lien upon the said lot, and

that the same, or so much thereof as may be necessary, be sold to satisfy the amount due thereon.

On the same day a petition containing the same allegations was filed against the same parties, but declaring on the note given by Poplin for lot 112.

In both cases personal service was had upon John R. Poplin, and there was a *non est* return as to Green L. Poplin, but no return as to Lacks, administrator of Varner. Suit was afterward dismissed as to Lacks. At the next term of the court orders of publication were made upon the *non est* returns against Green L. Poplin. These orders were duly published.

At the May term, 1879, a decree was rendered in both cases, finding the amount due on one note to be $198, and on the other to be $188; that the equity of redemption of defendants in and to said lot be foreclosed, and that the same be sold to satisfy the debt, interest and costs, and that a special *fieri facias* issue herein.

On September 26, 1879, a special execution was issued in each of said cases, and both of these lots were levied upon under the separate executions, i. e., lot 110 under one execution, and lot 112 under the other.

Thereafter the sheriff filed his report of sale, showing that on the 8th day of November, 1879, he sold lot 110 under said special execution, to Theophilus H. Bradley, for the sum of $45; that Bradley paid the purchase money, and that he had applied $22.40 to the payment of the costs, and the balance of $22.60 to the payment of the debt mentioned in the execution.

At the same time the said sheriff filed his report of sale, showing that he had sold lot 112 to Theophilus H. Bradley, for $49.05; that Bradley had paid him the purchase money; that he had applied $22.25 to the payment of the costs, and the balance of $26.80 to the payment of the debt mentioned in said execution.

On November 13, 1879, the said sheriff executed and delivered to Theophilus H. Bradley, a sheriff's deed, conveying all interest of Green L. Poplin in and to lot

110, in the original town of Poplar Bluff. And on the same day the said sheriff made, executed and delivered to said Theophilus H. Bradley, a sheriff's deed conveying all interest of Green L. Poplin in and to lot 112 in said town. On April 18, 1881, Theophilus Bradley (unmarried) conveyed by general warranty deed to W. A. Kendall, lots 110 and 112, in the original town of Poplar Bluff. On July 3, 1883, W. A. Kendall, conveyed by quitclaim deed to Missouri and Southwestern Land Company (the plaintiff) lots 110 and 112, in the original town of Poplar Bluff.

On November 19, 1886, Butler county, by C. W. Addy, commissioner, conveyed lot 110 in original town of Poplar Bluff to Luke F. Quinn (the defendant) in consideration of $50, and on July 25, 1885, Butler county conveyed lot 112, in said original town, to Luke F. Quinn (the defendant).

On the 2nd day of February, 1892, plaintiff commenced in the circuit court of Butler county, an action in equity to quiet title against Butler county and Luke F. Quinn, and praying that the said deeds from Butler county to Quinn be cancelled and set aside and the title to said lots vested in plaintiff. On this petition summons was issued and duly served, and defendants filed answer, and the case was continued from term to term until July 25, 1898, when plaintiff suffered a voluntary nonsuit. And this action was commenced on July 23, 1898, or two days before the other suit was dismissed.

The testimony shows that about 1885 or 1886, W. A. Kendall built a small house on lot 110, and put in a tenant, and that the tenant remained about one year, when the house became vacant. Quinn took possession, put in a tenant, and ever since has kept a tenant in possession.

The testimony further disclosed that respondent Quinn took possession of lot 110 in 1887, and lot 112 immediately after receiving his patent from C. W. Addy, commissioner of Butler county, which was in November, 1886. That Quinn claimed to be the owner

of these lots and had open, notorious possession for all this time, up to the time this suit was instituted.

Upon this evidence, as heretofore indicated, this cause was submitted to the court, and its finding and judgment was for the defendant. Motion for new trial filed by plaintiff being overruled, this cause was brought here in due form, by appeal.

Opinion.

The two lots involved in this suit, were held by the county of Butler for county-seat purposes, under the provisions of article 1 of chapter 40 of Wagner's Statutes, pp. 394, 395, 396, 397, 398.

The county court of Butler county appointed a "commissioner of the seat of justice" as provided by section 11, Wagner's Statutes, heretofore referred to, and ordered him to sell these lots. While the order of the county court, authorizing the county-seat commissioner to sell the lots, is not introduced in evidence, yet doubtless there was an order, for the commissioner in his report of sale recites the fact that he made the sale in pursuance of an order of the county court.

The power and authority of the commissioner to sell the lots in suit, the title of which were invested in Butler county, is based upon section 14, Wagner's Statutes, volume 1, page 397, which provides:

"The tribunal transacting county business shall reserve from sale lots and squares of ground, wherever it may be necessary to erect county buildings, and shall, from time to time, order the sale of the residue, prescribing the terms of such sale, and the commissioner shall make such sales accordingly; and when the purchase money shall be paid in full, the commissioner shall execute a deed to the purchaser, as commissioner, for and on behalf of the county, conveying to the purchaser all the right, title and interest of the county to the premises so conveyed, and such deed shall be acknowledged and recorded as other deeds."

It will be observed from the testimony in this

Vol 172 mo—37.

cause, that the commissioner sold these lots to Green L. Poplin, on February 7, 1871, on a credit of twelve months; the purchaser of these lots executed his notes, with approved security, payable in accordance with the terms of his purchase.

The authority and power of the commissioner to sell the lots in dispute, on a credit, is founded upon section 15, Wagner's Statutes, volume 1, page 397, which provides:

"'When any credit shall be given upon the sale of any lot for any part of the purchase money, the purchaser shall give his note or bond, with sufficient sureties, to the commissioner, for the use of the county to secure the payment of each installment; and the commisssioner shall deliver to the purchaser a certificate, describing the lots sold, the price, the amount paid, if any, the balance to be paid, when due and how secured."

The testimony further discloses that Green L. Poplin did not pay these notes or any part thereof, according to the terms of the sale made to him by the commissioner, Chas. S. Henderson, but made absolute default in the payment of the notes executed by him.

This leads us to the inquiry as to what was the force and effect of such default in the payment of such notes for the purchase money, according to their tenor and effect.

Upon an examination of the statute under which these lots were held by Butler county, and in pursuance of which the commissioner derived his authority to sell, we find that a full and complete answer to the question, as to the effect of the default of the purchaser in the payment of his note, is given by section 17, Wagner's Statutes, volume 1, pages 397 and 398, which provides:

"If default be made in the payment of the purchase money of any lot, or any part thereof, according to the terms of sale, or the tenor and effect of any bond or note given to secure the same, such lot shall be forfeited to the use of the county, and the commissioner shall resell the same, for ready money, at public auc-

tion, to the highest bidder, at the place of holding courts for such county for the time being, on some day during the sitting of the tribunal transacting county business, giving ten days' previous notice of the time and place of sale and the property to be sold, by advertisements put up at four of the most public places in the county; and, on receiving the purchase money, the commissioner shall make a deed to the purchaser, in the manner, and with like effect, as in cases of other sales under this chapter, and the purchase money shall be accounted for as other moneys received by the commissioner, and the amount thereof, after paying the expenses of the sale, shall be credited upon the bonds or notes of such delinquent purchaser; and if it be sufficient to pay the whole, such bonds or notes shall be cancelled, but no part shall be paid to such purchaser, although there may be more than sufficient to pay the debt due by him; and if the proceeds of such sale shall not be sufficient to satisfy the whole of the debt due by such purchaser, the commissioner shall proceed to enforce the payment of the residue, by suit."

The contract of purchase of these lots by Green I. Poplin, must be construed in the light of the provisions of the statute under which it was made. The commissioner was a creature of the statute, and he could only sell these lots in the manner provided by it. Section 17, supra, expressly declared that the default in the payment of the notes, should operate as a forfeiture of his purchase. As an indication of the extent of this forfeiture, it is provided upon a resale of the lots, even if upon such resale the lots should bring more than sufficient to pay the notes, "no part shall be paid to such purchaser." It will be observed further, that this section which provides for a resale of the lots at public auction, provides also in the last paragraph of said section that "if the proceeds of such sale shall not be sufficient to satisfy the whole of the debt due by such purchaser, the commissioner shall proceed to enforce the payment of the residue, by suit." This is the only provision which authorizes the commissioner to insti-

tute any proceeding to collect these notes. So far as this record discloses, these lots were never resold at public auction, as provided by section 17, heretofore referred to; no payment had ever been made on the notes. All the powers of the commissioner are defined by law, and he has no others. He was only authorized to collect the residue of the notes, after reselling them, in accordance with the provisions of the statute. The order of the county court, requiring the county-seat commissioner to institute suit upon these notes, did not confer upon him any additional power. The county courts are simply creatures of the statute and their warrant of authority must be looked for in the statute. The law nowhere provided any authority in the county court to make this request of the commissioner. Hence, this order of the county court was a nullity; and adds no force or effect to the action of the commissioner. If these lots had been resold as provided by law, and failed to bring the full amount of said notes, together with all interest thereon, then the commissioner was authorized to enforce the payment of the residue by a suit, and no order of the county court was necessary to give him this authority; for such power was conferred by the statute itself.

But we find that the commissioner, doubtless acting under the order of the court, instituted suits upon the two notes executed by Green L. Poplin for the lots in suit. These suits were instituted in the name of Butler county to the use of county-seat fund, against Green L. Poplin et al. Where he ever found the authority to institute a suit of that character and style we are unable to discover. However, he brought the suits, obtained judgments, executions were issued, on the judgments, these lots were sold and the parties through whom plaintiff claims purchased at the sale under the executions, and it is through this sale that the plaintiff claims to have an equitable title to the property in suit.

The suits upon the notes of Poplin seem to be based upon the theory that Butler county had a ven-

dor's lien on the lots for the unpaid purchase money. This contention can not be maintained. Persons who convey real estate, or a county that makes such conveyance, the purchase money not being paid at the time, beyond dispute, would retain a vendor's lien for such unpaid purchase money, and a suit to enforce the lien would be an appropriate proceeding; but in the case at bar, the county never made any conveyance of the lots, never parted with her title, but simply made a contract of sale that could only ripen into a title when the notes were fully paid and the commissioner executed his deed under the provisions of the statute.

We often see instances where grants are made, notes executed, and to secure the notes a conditional conveyance in the nature of a mortgage is made to the grantor; and upon the conditions being broken by the failure to pay the notes, the equity of redemption is foreclosed by a proper proceeding. But in this case, the title never left Butler county; on the other hand, the statute, which is to be construed a part of the contract, at the time of the execution of the notes for the purchase of this land, provided that if default was made in the payment of the notes, it should operate a forfeiture of the lots contracted for to the use of the county.

It is apparent that Butler county had no vendor's lien to enforce; the statute under which the county-seat commissioner procured his authority to sell the lots in suit clearly demonstrates that proposition. If it were necessary to assign other reasons why no such lien existed, we might simply add, that the county by taking the securities on the notes for the purchase money waived such lien. [Boyer v. Austin, 75 Mo. 81; Emison v. Whittlesey, 55 Mo. 258.]

It may be said that the circuit court, being a court of general jurisdiction, had the power to render the judgments offered in evidence. Let this be conceded for the purposes of this case. Yet if the court had no lien to enforce, and Poplin's purchase had been forfeited by the express provisions of the statute, then

the sale under the executions issued in pursuance of the judgments passed no title to the purchaser, either equitable or legal. Whoever bought at such execution sale purchased at his peril; the doctrine of *caveat emptor,* with its full force and effect, is applicable to him.

It is earnestly insisted by appellant that the county of Butler having ordered, through its agent the county court, the institution of the proceeding upon the notes which resulted in the sale of these lots, and having received the proceeds of sale, after the payment of costs, is estopped from denying that Green L. Poplin was the owner of said lots or had such an interest in them as was subject to sale under the executions. This contention can not be maintained. It must be remembered that when Poplin made default in the payment of the notes, under the contract of purchase, his contract of purchase was forfeited by the express terms of the statute, and Butler county had full title to the property; and the only purpose of the additional provision, that the commissioner sell at public auction, was to relieve the maker of the notes, to the extent of applying the proceeds of such sale to the payment of his obligations.

As an evidence that this was its only purpose, the statute provides that upon such resale at public auction, if the proceeds were more than sufficient to pay the notes, no part of such excess should go to the maker of the notes. It is insisted that as these notes were for the use of the county, the county could maintain this action under the general statutes. Concede this to be true, so far as obtaining a judgment upon the notes, it will certainly not be contended that the officers of the county had the right, after obtaining the judgment, to sell the property of the county to pay its own judgments.

The officers of the county had no authority to sell these lots (the title being in Butler county) to enforce a supposed or imaginary lien of the county; and their acts in this respect were void, and the county was not estopped by reason of such acts. This is not a case

where the officers had the right to enforce a lien, and had the power to sell these lots to satisfy it; it is not one where they simply undertook to exercise a power that they possessed, but exercised it in an irregular manner; but it is an effort to do an act that they never had any power to do.  We are familiar with the principles announced in the cases cited by plaintiff, and this court, where the officers of a county have power to act but act irregularly, and the county by its conduct and laches in asserting its rights, in an appropriate proceeding for that purpose, to the prejudice of the rights of an individual, will rigidly enforce the doctrine of estoppel and laches.  The cases of Sturgeon v. Hampton, 88 Mo. 203, and other cases cited by respondent, are applicable to the facts disclosed by the record in this case.

The appellant, by virtue of the conveyances introduced in evidence, was subrogated to all the rights of the grantors in such conveyances.  Its grantors having purchased at the execution sales at their peril, acquired no interest in these lots, either equitable or legal, hence have no standing in this action.

This leaves us to the discussion of the only remaining proposition in this cause. That is, as to the application of the statute of limitations to the facts disclosed by the record before us.

The testimony shows that in 1885 or 1886, the plaintiff's grantor Kendall, took possession of lot 110, built a small house on it, and placed a tenant in possession; this tenant remained in the house about one year, the house became vacant, and the respondent Luke F. Quinn, in 1887, went into possession and has had open and notorious possession ever since, paying all the taxes, state, county and city, levied upon it.

Respondent went into possession of lot 112, immediately after the execution and delivery of his deed from Butler county, through its commissioner C. W. Addy, which was sometime in 1885, and has remained in continuous possession, claiming title thereto ever

since, paying all the state, county and city taxes levied upon said lot.

On February 2, 1892, plaintiff commenced a suit against defendant, to cancel and set aside the two deeds executed by Butler county, through its commissioner, to defendant Luke F. Quinn, for the two lots involved in this suit. This suit was continued from term to term until July 25, 1898, when the plaintiff took a voluntary nonsuit. On July 23, 1898, two days before the former suit was dismissed, the plaintiff commenced the present action.

Section 4285, Revised Statutes 1899, provides: "If any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may, in like manner, commence a new action within the time herein allowed to such plaintiff, or, if no executor or administrator be qualified, then within one year after letters testamentary or of administration shall have been granted to him."

That this action was commenced on July 23, 1898, is beyond dispute, and is barred by the statute of limitation, unless the plaintiff falls within the protection of section 4285, supra.

In the case of Briant v. Fudge, 63 Mo. 489, this section was discussed. In that case a final judgment was rendered, and a motion in arrest of judgment was filed, alleging as a ground why such judgment should be arrested that there was no sufficient service of the writ on the defendant. While said motion was pending, and before the order arresting the judgment was entered, the plaintiff in that suit commenced his new action; the court held that the new action thus commenced was within the protection of this statute; but

in so holding it based such ruling on this principle which was announced by NORTON, J.: "The plaintiff, before the bringing of the present action, was thus explicitly notified by this motion, of such an irregularity in the former judgment as made it necessarily voidable, and in anticipating the action which was finally taken by the court in sustaining it, and vacating the judgment and bringing another suit before the determination of the motion, may be considered as having admitted that the motion was well founded, and as having abandoned all rights that might accrue to him under the judgment."

It will be observed in Briant's case, supra, that the learned judge reaches the conclusion that from the action of the parties as disclosed by the record, it could appropriately be deemed that, in effect, the judgment had been arrested.

In the case of Wood v. Nortman, 85 Mo. 298, the court, through NORTON, J., says: "It is also insisted that the present suit was brought before, and not after, the nonsuit was taken, and for that reason plaintiff can not claim the protection of said section 3239. This suit was brought five days after the motion to set aside the judgment, in order that plaintiff might take a nonsuit, and nine days before the motion was sustained and the nonsuit allowed. The suit was evidently brought, as was the suit in the case of Briant v. Fudge, in anticipation of the action of the court on the motion, and the fact was stated in the petition filed in this case, which was served on defendant the same day the motion was passed upon and the nonsuit allowed, that a nonsuit had been taken. This fact, in connection with the facts stated in the motion, was equivalent to a withdrawal of the prosecution of the first suit, and as to the commencement of this suit, and the nonsuit, brings the case under the operation of the principles laid down in the case of Briant v. Fudge, 63 Mo. 489."

It will be noticed in the case last quoted, that the ruling in that case was based upon the particular facts of that case, disclosed by the record. What was done

in that case, as was announced by the learned judge, "was equivalent to a withdrawal of the prosecution of the first suit," before the institution of the last. It is clearly deducible from those cases, that, had not the particular conditions existed, as disclosed by the record, the court would not have held that they were within the provisions of the statute mentioned.

In the case before us, we are confronted with an entirely different record. Nothing appears in this case, as did in the cases decided by Judge NORTON, from which this court could say in effect, that a nonsuit had been taken, or any motion or notice from which it could be anticipated as to what would be done in the case pending.

It is no answer to this difficulty to say that the nonsuit was taken two days after the institution of this suit. The statute contemplates the institution of suits within one year after the nonsuit is entered. If the statute is to be construed as of any operative force, if a new action can be brought two days or even one day before the nonsuit is taken, then the principle can be applied to suits brought nine, ten or eleven months before the nonsuit is entered. This position can not be maintained. The new suit, to come within the protection of this statute, must be brought within a year after the nonsuit is suffered, and the record must disclose this fact, or such a state of facts as would authorize the court in holding that the conditions surrounding the particular case were equivalent to the sufferance of a nonsuit.

In the suit before us, there is not an indication that another suit is pending; no statement in the petition, as there was in the case of Wood v. Nortman, supra, that a nonsuit had been or would be taken; but so far as the record discloses, this is not a continuation of the old action, but is a disconnected and independent one. Respondent was in possession of lot 110 eleven years and lot 112, twelve years, and we take it from the statement in appellant's brief under point 12, that it is practically conceded that, unless this present ac-

tion falls within the protection of section 4285, supra, this action is barred by the statute of limitation.

Appellant says upon the question of statute of limitation: "The case of Missouri and Southwestern Land Company v. L. F. Quinn and Butler County was begun in 1892, and continued on the docket until July, 1898, when a voluntary nonsuit was suffered. Plaintiff had one year from that time in which to commence another suit. The first suit was begun within ten years, and this suit was begun before the other was dismissed, therefore there is nothing in defendant's plea of the statute of limitations."

For the reasons herein expressed, we are of the opinion that this suit before us does not come within the protection of the statute as cited and contended for by plaintiff, and is therefore barred by the statute of limitations.

Entertaining the views as herein expressed, we are of the opinion that the action of the trial court in finding the issues for the defendant, and dismissing plaintiff's bill, was proper, and its judgment will be affirmed. All concur.